**MISSOURI DEPARTMENT OF SOCIAL SERVICES, DIVISION OF MEDICAL SERVICES, Appellant,**

v.

**ALEXIAN BROTHERS OF ST. LOUIS, INC., d/b/a Alexian Brothers Hospital, Respondent.**

No. WD 51919.

Missouri Court of Appeals, Western District.

July 16, 1996.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 27, 1996.

Application to Transfer Denied Oct. 22, 1996.

Kathleen Knepper, Missouri Department of Social Services, Jefferson City, Charles A. Miller, Caroline M. Brown, Covington & Burling, Washington, D.C., for appellant.

Terry C. Allen, Thomas W. Rynard, Craft, Fridkin & Rhyne, Jefferson City, Cawood J. Bebout, Thomas P. Hohenstein, Gallop, Johnson & Newman, St. Louis, for respondent.

Before SPINDEN, P.J., and BRECKENRIDGE and ELLIS, JJ.

ELLIS, Judge.

The Missouri Department of Social Services Division of Medical Services ("DMS") brings this appeal challenging an order entered by the Circuit Court of Cole County awarding monetary relief to Alexian Brothers of St. Louis, Inc. d/b/a Alexian Brothers Hospital ("Alexian Brothers"). Adopting findings of the Administrative Hearing Commission ("AHC"), the circuit court found the DMS cap on Medicaid reimbursement for psychiatric services violated the "reasonable costs" provision of § 208.152.1 [1] and violated procedural and substantive provisions of federal Medicaid law.

Prior to January 1, 1990, health care providers within the Missouri Medicaid program received reimbursements from DMS based on a per-diem rate. The per-diem rate was

---

1. Unless otherwise noted, all statutory references are to RSMo 1994.

calculated for each provider by dividing the provider's total allowable Medicaid inpatient costs by its total Medicaid inpatient days of stay. 13 C.S.R. 70–15.010(3). The per-diem rate was a "blended" rate because it reimbursed providers at the same rate regardless of the type of care rendered. For example, an acute care hospital providing both acute and psychiatric care was reimbursed at the same rate for both types of care even though acute care often has a higher cost than psychiatric care. The per-diem rate included an adjustment which increased the rate to account for inflation, a process referred to as "trending forward." 13 C.S.R. 70–15.010(1). At the end of the hospital's fiscal year, DMS balances the hospital's allowable Medicaid costs against DMS' total Medicaid reimbursement payments to ensure the latter do not exceed the former.

In 1990, in response to what it considered to be runaway growth in psychiatric care costs, HCFA placed a ceiling or "cap" on the per diem reimbursement rates for certain inpatient psychiatric services.[2] Pursuant to 13 C.S.R. 70–15.010(15):

> Effective for admissions beginning on or after January 1, 1990, certain psychiatric services will be reimbursed at the lower of the hospital's Title XIX per-diem rate or an inpatient psychiatric per diem of two hundred seventy-seven dollars ($277).... The inpatient psychiatric per diem is based on one hundred ten percent (110%) of the 1988 weighted average cost for instate, freestanding, nonstate-operated psychiatric units. The psychiatric rate will be adjusted by the inflation factor described in subsection (1)(F) granted on or after January 1, 1990.

The amount of the cap was determined by a DMS auditor who evaluated the psychiatric care costs reported by nine freestanding private psychiatric hospitals or psychiatric units participating in the Missouri Medicaid program. The auditor examined each facility's Medicaid cost reports for fiscal year 1988 and calculated a weighted average per-diem cost of $252.05. Certain ancillary costs were omitted from the analysis and the resulting per-diem figure because the DMS "Provider Manual" indicated DMS did not reimburse for such services.[3] The auditor increased this average per-diem cost figure by an inflation trend factor of 10% established by DMS based on the Gross National Product Implicit Price Deflator. Using this methodology, DMS determined the per-diem cap on Medicaid reimbursement to be $277.00 per patient day. As a result, a provider would be paid at the lower of its blended per-diem rate or the cap rate for the covered psychiatric services it rendered. DMS continued to include the lower costs psychiatric services when calculating the general per diem rate.

Since its initial calculation, the psychiatric cap has increased as a result of a few modifying calculations. Effective July 1, 1990, DMS increased all per-diem rates, including the psychiatric cap, by a trend factor of one and one-half percent (1.5%), raising the cap to $280.42 per patient day. In 1992, utilizing the same methodology as the original cap, the same DMS auditor rebased the psychiatric cap with each provider's reported Medicaid costs for fiscal year 1990.[4] The auditor calculated the 1990 weighted average cost to have been $326.37 per patient day. The auditor then trended this figure forward to arrive at a total per-diem reimbursement cap of $344.66 per patient day, effective October 1, 1992.

Alexian Brothers provides both acute care and psychiatric care services. Under the "blended rate" scheme, Alexian Brothers was reimbursed at a rate based on the average of the higher cost acute care services and the lower cost psychiatric services. However, under the restrictions on reimbursement for psychiatric services imposed by the DMS cap, Alexian Brothers would not receive its full per diem rate for psychiatric services to the extent the per diem rate exceeds the cap.

---

2. Only certain diagnosis codes are subject to the cap on per-diem reimbursement.

3. These excluded services included group therapy, individual therapy, occupational therapy, adjunctive therapy, speech pathology, psychological testing, and most other psychiatric treatments other than hospitalization or electroshock.

4. Alexian Brothers raises its challenge to the DMS psychiatric cap following its adjustment in 1992 and seeks relief as of the new plan's effective date, October 1, 1992.

On October 17, 1992, Alexian Brothers filed a complaint with the AHC challenging its reimbursement rate under the 1992 plan. Amended complaints were filed on February 24 and June 1, 1993. Alexian Brothers asserted procedural and substantive violations of state and federal constitutional, statutory, and regulatory provisions. An evidentiary hearing was conducted on July 7, 1993, and on December 28, 1993, the commissioner entered his Findings of Fact and Conclusions of Law. The commissioner made findings of fact but determined he lacked jurisdiction to grant Alexian Brothers relief.

Both DMS and Alexian Brothers appealed to the Circuit Court of Cole County. In its Findings of Fact and Conclusions of Law, the circuit court adopted the findings of the AHC and concluded that DMS had violated § 208.152 and procedural and substantive provisions of the Boren Amendment. The circuit court declared the psychiatric cap void and invalid as applied to Alexian Brothers and ordered DMS to reimburse Alexian Brothers for the deficiencies caused by the cap since October 1, 1992.

This court's decision today in *Missouri Department of Social Services, Division of Medical Services v. Great Plains Hospital, Inc.*, 930 S.W.2d 429 (Mo.App.1996) is dispositive of this case. In *Great Plains*, we determined DMS violated the "findings" requirement of the Boren Amendment when it created and subsequently modified a cap on reimbursement for psychiatric services thereby rendering the cap void and of no force or effect. As a result, we concluded Great Plains Hospital was entitled to be reimbursed the difference between what it was paid by DMS under the cap and what it would have been paid without the cap. DMS does not raise any new arguments in this appeal, and no further discussion of the issues is necessary. Therefore, in light of our decision in *Great Plains*, we affirm the decision of the circuit court.

All concur.